Good morning, Your Honor. May it please the Court, Mr. Shelton was going to, we're splitting time. Unlike the last case, we represent different parties. No, I understand that, I understand that. Well, Mr. Shelton is going to go first. I have to get my speech. Thank you, Your Honor. Yes, Mr. Hoover, are you going first? No, Your Honor, this is Ian Shelton. I'm going first. Good afternoon, and may it please the Court. I represent Appellants Jonathan Freund and his law firm Freund Legal. Mr. Freund's client, J.C. Lee, is separately represented by Mr. Hoover. I'd ask to reserve one minute of time for rebuttal. J.C. is the only daughter of Stan Lee, making her his sole heir and the representative of his estate and trusts. As explained in the FAC, and in her own words at the hearing before the District Court, J.C. believed that her father was the victim of fraud perpetrated by Powell, and she wants to protect his name through this lawsuit, seeking a declaration that she owns Stan's post-mortem publicity rights as his heir under California Civil Code 3344.1. This Court should reverse the Rule 12b-6 and Rule 11 rulings because the District Court failed to recognize that J.C., Stan's daughter and heir, had statutory claims under Section 3344.1 to pursue ownership of her father Stan's post-mortem publicity rights that had nothing to do with the 1998 contract that the District Court found was barred by res judicata. Counsel, where in the First Amendment complaint were these rights under Civil Code Section 3341 mentioned? Could you tell me in the record where those were mentioned in the First Amendment complaint? Sure, Your Honor. I will state that the words Section 3344.1 are not found in the FAC. If you look at paragraph one, it does refer to Ms. Lee owning intellectual property rights, quote, since his death on November 12, 2018, close quote. And then, of course, as to the 1998 contract in the counts, Ms. Lee pleads that she is insecure and uncertain as to the right, as to whatever rights that she might have under the 1998 contract. But Counsel, do you think that sufficiently pleads post-death right of publicity claim under the statute that is not even mentioned? Yes, Your Honor. And this is why, in response to the motion to dismiss at the hearing before the District Court, it was repeatedly requested that the court grant leave to amend so that J.C. Lee could spell out her statutory claim under 3344.1. And this was not this was not 282. This is in the motion to dismiss opposition. She is only seeking declaratory relief with respect to Stan Lee's postmortem rights under Civil Code Section 3344.1, and if necessary, will amend her complaint to specify the statute in question. That's footnote seven in the opposition in the motion to dismiss. Mr. Freund at the hearing said the rights of publicity arise under Civil Code Section 3344.1. That's at the record 1ER42, lines 21 to 22. Ms. Lee repeatedly requested that the District Court give her a chance to amend her complaint to protect her father's rights by asserting her statutory claim under 3344.1. And the standard in this circuit is dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment. That's the eminence capital case that we cite, Ninth Circuit 2003, in our brief. But the problem here is, I mean, the initial issue is race judicata, and that turns on privity. And the complaint says, by this lawsuit, Stan Lee's heir and estate seek to perform the obligations mandated by the SLE judgment in confidence Stanley made with his namesake. It is intended to enforce the exclusive and unencumbered rights he conveyed to the namesake company he founded when he was liberated, etc. So the complaint says specifically that it's intended to basically enforce the 1998 agreement. So the 1998 agreement is quoted several different times. Yes, Your 1998 agreement is raised in the complaint. But if you look at the counts of the complaint, it simply states that she is the owner of the rights. There are more than one source of rights that she could use to claim ownership of Stan's postmortem rights. One is 3344.1. Another alternative way she could claim it is through the 1998 contract. The District Well, no, Your Honor, under the under the stipulation and the state court stipulation that's in the record, it's not part of the Rule 11 record, but it was attached to the motion to dismiss. It's in resolving that dispute. Miss Lee was the defendant in a lawsuit brought by SLMI as representative of the estate. She resolved those claims, right, in order to resolve a disputed claim. As part of that resolution, the stipulation states that she obtained rights through the 1998 agreement to the extent they exist. But in resolving that claim, it just simply gave her a secondary argument to claim those rights. She always had her statutory rights. If the 12B6 dismissal is affirmed, it will be undisputed that in no venue has JC been able to assert on the merits her claim to these rights under 3344.1. No court has addressed the postmortem rights. No prior party has asserted those rights. Those rights didn't come into effect until Stan's death in 2018. And what Mr. Freund was trying to do in his complaint was obtain a declaration of ownership. He was just saying, my client owns these rights. And Miss Lee was also aware of the fact that postmortem rights can be hypothecated through contract before the death of the personality. So in Mr. Freund's pleading, what he had to address was the fact that, well, before Stan passed, there were two potential avenues that those rights could have been passed. It could have been under the 1998 agreement. He said, he pleaded in his accounts, I am insecure and uncertain as to my client's rights and obligations with respect to the 1998 contract. Then you have the PAL contracts that were executed before Stan's death. Were the rights conveyed under those contracts? Mr. Freund said, if I get anything under the 1998 agreement, then she inherits through that. If that's barred by under 3344.1. She's entitled to plead in the alternative. This is a request to clear title. She's seeking a declaration of ownership. Mr. Freund was concerned about the fact that SLMI, SLE had sued his client. And this was a way to adjudicate competing claims to the same asset. And this all goes back to the legal standard, your honor, that we requested leave to amend to clarify that the claims were brought under 3344.1. Mr. Rainey PAL does not dispute that those claims have been adjudicated. He does not argue that the 3344.1 claim is barred by res judicata. If you plead and request leave to amend, and it's denied when you could assert them, that means that claim is stripped from you. The daughter of Stanley can never assert in any future case that she is the statutory heir of these rights. If the 12B6 dismissal is affirmed and construing the allegations and the light most favorable to JC, she's entitled to clarify that when she says, I own these rights. Your time is out, actually. I just want to clarify one thing. Are you arguing, and we haven't gotten anywhere near the sanctions yet, but are you arguing that the, although we have obviously, because if there's anything to your argument, then you shouldn't have been sanctioned, that with regard to the recognizing that with regard to the one of the two paths that you're talking about, i.e. the 1998 agreement, that she is in privity and that there is a res judicata problem, and that there, and you're arguing that there is another path, which I understand to be that whether or not, that if, in fact, the 1998 agreement was abrogated and at that point that POW took advantage of her father and that they shouldn't have gotten the rights, even if the 1998 agreement was abrogated. Is that, that's your second argument, but your, is that right? Correct, Your Honor. But your first argument, I, it seems not to work very well in terms of the privity and res judicata point. Your Honor, to be clear, we are not appealing the district conveyed by the 1998 agreement. We're not appealing, we're not appealing that. We're not saying the district court erred in this, in the 12B6 dismissal of the argument that any rights passed to JC through the 1998 agreement. What we are saying is that she asserted a claim to ownership. She has a viable legal theory to claim those rights that have nothing to do with the by fraud and were invalid, which is what the district court relied on to sanction my client. When, when actually the fraud allegations defeating the POW contracts, that's how you win the 3344.1 claim. So if, if leave is granted to amend, we can clarify that the only remaining claim is 3344.1 and JC will get her day in court. And Your Honor, as to, as to the amount, you know, the million dollar sanction against a non-attorney and a quarter million dollar sanction against a lawyer for an issue that's taught in law school, a complex issue of res judicata. We believe that that's really addressed in the papers, but we want to just point out the negligence in analyzing legal defense, even for the cases that are cited that involve a three or fourth figure sanction. Usually those are recidivist filers of complaints where they've already been dismissed on the same allegations. So there is nothing in the record that it would support a million dollar sanction on these facts. I want to give Mr. Huber some opportunity. Counselor, before you leave, I wanted to ask you, you said that you would amend the also linked to the assignment agreement? No, Your Honor. So the, well, this is, this is how we would amend to clarify. So if the rights passed under the 1998 agreement, that was before the PAL contracts, right? So if that was a viable avenue, right, then fraud occurring after 1998 would, would not be relevant. It would mean that SLMI owned the rights and then through the is that the statutory rights under 3344.1, that happened after the PAL contracts, right? So we have to knock out the PAL contracts to claim under 3344.1. And that's where the fraud allegations come in. And the district court said- But I think what Judge Rollinson is asking, and I'm curious as well, is that in the earlier litigation without JC, wasn't there, wasn't the main allegation, the allegation that the PAL contract was secured by fraud with regard to the SLE arguments? I, I do not believe, I do not believe that that's a core allegation, Your Honor, that the PAL contracts were procured by fraud. I think, you see, the issue always was, and this is the whole point, those prior litigations were about the 1998 agreement, right? Was it valid or was it not? Mr. Rainey and the district courts, you know, they said they found that it's barred by restituted product. All the other stuff is, well, if the PAL contracts came after, are those valid? And if they're procured by fraud and invalid, then our client, JC, can amend her complaint and say, look, plain and simple, 3344.1, any competing claim before mine through the PAL contracts is invalid per fraud. And there has just never been any contention in any of the briefs that that claim has been to, to, to air that claim on the merits. And of course, not only was her claim dismissed before it was adjudicated on the merits, she was sanctioned a million dollars in her without getting a chance relief to amend. Well, in all fairness, that claim wasn't really articulated in the first amendment complaint. Your Honor, it could have been articulated more clearly, and we repeatedly asked the district court to give us a chance to do that. I agree. It should have been clear. Let's go to Mr. Huber. Thank you. Thank you, Your Honors. I may have pleased the court. I'm Craig Huber, and I represent the petitioner. And it would be helpful if you didn't repeat. Sorry, I've been set. Oh, absolutely. Absolutely. And I won't repeat arguments with respect to 12B6 other than to confirm that in the event that this court reverses the court's order on the 12B6, that it must also have necessity reverse the Rule 11 order against J.C. imposing a million dollar sanction against her and the quarter million dollars against her attorney. And as the court knows well, the imposition of Rule 11 sanctions is, it's a very heavy handed measure. It is something that is reserved for the most egregious and severe cases, rare and exceptional, according to operator engineers. And all doubts in favor of the signer of the pleading are to be resolved in favor of the pleader. In other words, against an imposition of Rule 11 sanctions. And it seems the trial court did just the opposite here in the same way that it did with the 12B6 motion, where it didn't resolve all doubts with respect to the pleading itself. With respect to the Rule 11, it just went out of its way to levy this sanction against a non-attorney for her really was not in a position to comment on whether or not the claims had legal merit or not. She simply knew what the facts were. She hired counsel and counsel's job is to frame those issues, put them in the complaint and file it and also decide when and how it's to be served. Now, what the court did do was it repeatedly discounted certain evidence. For example, it didn't look at the comment on the Freud Declaration with respect to the reasonable investigation. There was a six or seven page declaration that just was not even analyzed or addressed by the trial court. It considered evidence that I say evidence, but it wasn't evidence at all. And what the court was doing, obviously Rule 11 sanctions don't apply to a non-lawyer for a frivolous pleading. It's where you show an improper purpose. What's the improper purpose? Well, the improper purpose here, according to the respondents is she filed this complaint. She held on to it. She went to the press and she inflamed this media fury after doing so. Now, first of all, all of the circumstances surrounding that relate to the first pleading. They are the initial complaint. The Rule 11 motion, the operative one, because the first one was denied on procedural grounds, there was no reference whatsoever to the first amendment complaint having been held on to for the reason that it was served through PACER as the court knows. There was no indication whatsoever that it was taken to the media. And this evidence that the respondents relied upon, they were hyperlinks that were put in the briefing. I've never seen anything like that in my life. They were not introduced as evidence. They were simply references and conclusory argument made about these hyperlinks. And then presumably the parties and the judge was supposed to use the hyperlinks and go to these hearsay articles. And there they would see that there was an actual in the article was obtained. And the trial court continually accepted counsel's arguments with regard to the supposed lack of truth in the allegations in the first amendment complaint. Now, obviously, as Mr. Shelton has addressed, there were allegations included in there that were designed to prove fraud in the inducement and to discredit the power agreement. It certainly could have been pled better and the court was asked to allow that to take place. But what the trial court looked at these allegations and leaped to the conclusion that because these allegations were purportedly unrelated to any of the specific causes of action, they must have been included for an improper purpose. Why else would they be in there? Well, the fact of the matter is there's no benign and inoffensive way to plead fraud allegations. You're accusing someone of fraud and you have to state it with specificity. In fact, the pleading requirements are that you were for the very legitimate purpose of, as Mr. Shelton addressed, discounting and discrediting the power agreements. The court also repeatedly overlooked and we're talking about a million dollar sanction against a non-party for relying on her lawyer to investigate the case, file it, protect it. A million dollars against a party. You said she was a non-party? Excuse me. She was wasn't a party to she was a party. She wasn't a not she's a non-lawyer. She wasn't a party to the previous lawsuits. And the court overlooked procedural issues when I don't want to harp on procedural issues, but there were issues and Rule 11 requires strict compliance with all of the procedural aspects because it's such a heavy-handed lever for the trial courts to use. There wasn't a file-ready motion filed. The original motion was denied on procedural grounds and the respondents didn't even bother to file a reply once it was pointed out that the safe harbor provisions were violated. They just let it go and didn't even bother to either withdraw it or address it in reply. And then with respect to the record, the trial court, you know, said over and over again how the respondents had specifically decided they wanted a five million sanction in connection with this particular motion. And they chose that amount as a deterrent to make sure that this type of case doesn't get filed again. And the fact of the matter is there was no specific request for that amount. There was no argument about that specific request. You're now going off into fairly irrelevant things. It seems to me that you're better off sticking to your major point. Yes, well, and the major point is obviously we've got a non-lawyer who was sanctioned under Rule 11 for a seven-figure sanction that was supposed to supposedly dissuade her from doing something that she had never been shown to have done before, which is file a frivolous lawsuit. Council, do you take issue with the finding by the district court that in view of the numerous cases that were raised through the on this issue that the fouling of this action was frivolous? We do take issue with that, Your Honor. We believe that the, I mean, certainly the raised judicata analysis we don't take issue with. But that's not part of the appeal. But that be the rights that Mr. Shelton had. I thought it is part of the appeal. I thought it's a major part of the appeal. As Mr. Freund's lawyer went on at some length earlier, that is his position, at least, and I assume it's yours, is that the raised judicata decision may have been partly right, but it's not true as to the whole complaint. That's my understanding of his position. Yeah, and perhaps I wasn't stating that clearly and misunderstood the question. But yeah, Ms. Lee was not a party to the other lawsuit. She was not a litigant. It was her father. She's asking for Lee to bring claims against Powell relating to her father's post-mortem 3344.1 rights of publicity. The problem with that argument is that the case the court was dealing with was not the 3344.1 case. It was the assignment agreement case. And so if that not in effect, and she was climbing through that agreement, why wouldn't this be frivolous? Well, it's not frivolous for the reason that the argument is that the rights that she's pursuing here are different from what was adjudicated under the 98 agreement. These are rights that she's seeking to, and she may well be found ultimately to not possess the rights, but she wasn't given the opportunity to plead it properly, and that was... But the first amendment complaint that the judge was looking at included these allegations that were tied to the unenforceable assignment agreement. So if we just look at that and not the now sought post-mortem publicity rights, is it fair to say that the district court was correct in determining that those claims were bought by race judicata? Well, I will say this with respect to the frivolousness analysis, Your Honor, and with respect to my client, Ms. Lee, I don't think she's in a position to have determined one way or the other whether race judicata applies, which is the reason why the frivolousness argument does not purpose, and the whole idea is obviously you hire counsel as a non-lawyer, and they go out and investigate, and they let you know whether they think you have a case or not, and they plead that case for you, and that's what this is about. So is it your argument that the sanctions should have been imposed only against counsel? I don't think sanctions should have imposed at all, Your Honor, for the reason that there was a reasonable and good-faced investigation that was detailed in the opposition to the Rule 11 by Mr. Freund, and that he is stating, he's attempting to state claims with respect to these post-mortem rights that were not adjudicated in the other cases. So I don't think the complaint is either frivolous, and certainly, Ms. Lee has not been shown to have operated with such an improper purpose that would warrant a million-dollar sanction against her. Okay, sir, you are well over your time. Thank you very much. Thank you. We will go to Mr. Rainey. What's the matter? I had to unmute myself. Sorry. Thank you, Your Honor. Can you hear me okay? Yes. Good. Good afternoon, Your Honors. May it please the Court, Charles Rainey on behalf of Respondent Powell Entertainment. Appellant and her counsel are attempting to rewrite the entire complaint on appeal by repeatedly mischaracterizing and, in some instances, outright misstating the contents of that complaint. The appellate's original and amended complaint, which were substantively identical, both hinged entirely upon this 1998 agreement, an agreement that no fewer than five federal courts had previously ruled to be unenforceable. Now, well, she didn't know. She was just following the instructions of her counsel. The truth is, this matter had been litigated over a decade, and Ms. Lee would have been... But it wasn't litigated by her, and she wasn't a recidivist in any way. I'm talking more about the sanctions than about the merits. This is a very unusual set of circumstances to impose a million-dollar sanction, is it not? Or, indeed, any sanction on her. Ordinarily, one has to have some kind of repeat behavior, and we don't have any here. Your Honor, if I may, this is a unique circumstance that requires a very high sanction. This matter had been litigated over the course of a decade, and yes, she was not a direct party. Yes, I'm getting you back. She was not a direct party, but she's claiming right now to be in privity, to be bringing these claims on behalf of that same party that had brought those five prior... Actually, six prior lawsuits. Now... Well, she's not saying... And clearly... I mean, as I understand it, she is saying that... Well, two things. She is... Yes, she is talking about the 1998 agreement several times and saying that she had this agreement to bring, to try and enforce it. First of all, didn't she file this case before that settlement? Yes, Your Honor. That settlement was a fraud. It was an absolute fraud. She alleged that her another case filed against her on behalf of Stanley Entertainment, and that case filed by Stanley Entertainment alleges the same facts that were already in her suit against POW Entertainment. Now, in addition to that, then they never served her with that court case. A few months later, she then enters a stipulated judgment, and that stipulated judgment is critically important because it completely undermines everything her attorneys are trying to argue today. In that stipulated judgment, she swears under oath that she does not own any of these rights, and that, in fact, all of these rights belong to Stanley Entertainment. And then she uses that stipulated judgment in this case to try to say, I now have an obligation to bring this matter. I have to. In fact, if you look at her amended complaint at paragraph 10, she says, by this lawsuit, Stanley's heir and estate seek to perform the obligations mandated by the SLE judgment and covenants Stanley made with his namesake company, Stanley Entertainment, Inc. She's not bringing anything on her own behalf in this case. She's bringing those actions on behalf of Stanley Entertainment. Now, opposing counsel very artfully cites to a typo in the middle of the causes of action and says, well, here it says she owns it. Well, if you look back at those causes of action, it's just a recitation of the elements of the specific tort claim. So, yes, it says, yes, she owns this because you have to own copyright before you can sue on it. You have to own the notably pointed out is not even mentioned anywhere in the complaint. But even if we assume that section three, three, four, four point one is what she's bringing her cause of action under. She's bringing that cause of action on behalf of Stanley Entertainment at no point in the general allegations that she alleged any fact that would suggest that she owns anything. Moreover, she's already stipulated and signed a document under oath that says I don't own this stuff, that this is owned entirely by Stanley Entertainment. So the fact that she would then come in here and essentially try to rewrite her complaint is also, I think, testament to just how again, not one case, not two. There were five separate federal cases, three of which were appealed to the circuit courts. All appeals were denied. All writs of certiorari were denied. And they all litigated over the same paragraph of the same page of the same contract. Now, today, opposing counsel says, oh, well, we're not on. That's not really what we're talking about on gave up this issue or that they conceded this point. In fact, they didn't concede this point necessarily. Instead, what they tried to do is say, ignore that entire part of our argument, which was our entire case. And I want you to look at a few paragraphs early on where we make vague references to fraud. There is no fraud claim in the complaint. There is no fraud claim in the complaint. Most of the times they use the word fraud, they're referring to other third persons who are not even a party to this case. They're referring to the parent company of POW Entertainment or they're referring to the prior company of Stanley Entertainment. But they're not often referring to the current management. The only place in which they indicate some sort of fraud might have occurred is where they say that essentially the management of POW had lied to Stan by letting him think that he still had these rights when, in fact, he had the rights under the rights that belonged to Stanley Entertainment under this 1998 agreement. Well, that had already been litigated so many times. Even if that was the misrepresentation you're the 1998 agreement is not valid. It's not enforceable. You cannot come back later and try to resuscitate this agreement. I understand this idea that this million-dollar sanction is a large sanction award, but that was warranted in this case. We've got so, and as I believe Judge Wright pointed out, even at this magnitude, where there was a race judicata issue and the particular plaintiffs and plaintiff's attorney were not involved in the earlier cases. I mean, what's really going on here, it seems to me, is that judge is extremely exasperated, perhaps and probably correctly, with the SLE people and they believe that they, I suppose, are paying the lawyers and actually wrote this and this is all a front for them, but he sanctioned the wrong people. I disagree, Your Honor. I disagree. I think that this is part of, I mean, she admits in there that she is a shareholder of Stanley Entertainment, that she has rights in this company, that she's basically in cahoots with these same people. She acknowledges it in her own documents and in her own testimony at the hearing. She says, I have nothing but interest in this. I have nothing but what? I'm sorry, I didn't hear that. Interest, yeah. What's your interest in this? She says, I have nothing but interest in this. She says that to Judge Wright right there in the hearings. I don't know what that means. I mean, if you look through the purple and pleadings, though, she does acknowledge that she has a right here. Now, my argument would be that, look, if we look back over those other cases and we say, well, because it was brought by a different party, that's not sanctionable. Well, then this will never end, because if you look back at those old cases.  Every one of those cases was brought by a different party. And maybe it will never end, but not because of her. That's the problem. This is a judgment against her, not against the people who are running around trying to find people to bring lawsuits, if that's what you're saying. Well, what we're doing, though, is we're allowing this to continue then at that point. What is your argument about why she had an improper motive? Well, for one, the fact that she's admitted that she has an interest in SLE. Oh, she admitted it, so that's not very improper. I mean, she's not concealing it. She has an interest in SLE. So what's the improper motive? The improper motive would be, of course, to cast a shadow over the title to these assets for as long as she possibly can, and to do this in a very public way, which they did, issuing a public relations statement right after the case was filed. What proof do you have of that? Well, she admits that in the hearing. They don't deny that, as far as I recall. I don't want to say she admits that. They don't deny that, though. And it was raised during the hearing, and there was never anyone who said, we didn't do that. As far as I can recently, in the last round of pleadings, where they tried to say, well, there's no evidence of that. But that ratio was raised, and nobody denied that they'd sent out a press release. And the fact is that the very next day that the case had been filed, there was a whole press bonanza around this. Well, that's not so unusual. Reporters read filings. I would also point out that the case flaw is clear, though, that where you have a frivolous case, where it's been determined that the case is frivolous, that can provide an inference of an improper purpose. Moreover, when you add that to the fact that they took several months to serve the defendants in this case, allowing that period to stretch out as long as it could, and then when we finally were served and then we responded to the case, they waited to the last possible day to file an amended complaint, which was effectively the same as the first complaint, thereby further stretching this whole thing out as far as they could. They knew that this was not a viable case. They didn't care. You know, in the district court, that happens all the time. People wait to the last minute to file their papers. No, that's not what I said, Your Honor. What I said was that we filed... So let me lay it out. They filed their case September 27th, 2019. November 6th, I served them with a letter, because now we've not been served yet, but I gave them a letter warning them of sanctions and saying this is sanctionable. You know that these cases are already there. You know that you're hereby on notice of this long history of these exact identical claims. Now, that was is when we finally served the motion for... I think it was 19 days later is when we served our motion for sanctions. We were 20 days, one day short of the limit, and that's why the original motion for sanctions was denied, because we were one day short of the safe harbor rule. They still didn't serve us though until December, and then when we finally respond in January, then they wait. They don't tell us anything about a possibility of an amended complaint until after we've already answered the case, after they've already heard all of our arguments on this. Then they wait until the last possible moment and file an amended complaint before it's time for them to respond to our motion to dismiss. That further stretches this out even farther. We don't actually get before the judge until June, and I believe it was March or late March or early April when we file our new motion for sanctions after we've given them ample time at that point to all of the things that we've given them, and they still didn't change anything, and they filed an amended complaint... Can we go back to the complaint for a minute, because I'm staring at it now? I've heard what you've said, and I thank you for it, but you say that she didn't assert her own right, but she does say that she... The second action for declaratory relief seeks a declaratory judgment that the defendants are not the rightful legal owner, and a plaintiff is the rightful and legal owner of Stanley's name and likeness, so that doesn't sound like she's suing us a stand-in for anybody on that provision in that section. And I'd go back to that. That is literally a recitation of the causes of the elements of the cause of action. There is no fact alleged anywhere in those general allegations that supports any contention that she owns these things. But the action for declaratory relief is a request for a declaration that she owns it. Petra? I mean, yeah, there it is. I mean, that's not alleging any facts relevant to that. It's basically contradicting what she's writing earlier on in her preliminary statement in her general allegations, in which she says repeatedly that Stanley Entertainment owns everything. It also contradicts what's in the stipulated judgment that she signed with the and remember, this amended complaint was filed, although the first complaint was filed before the entry of that stipulated judgment, this was filed after the entry of that stipulated judgment. So she is now admitted under oath and sworn to the court that she doesn't own any of these things. I submit to you, Your Honor, that that is merely a typo and that they intended to say that Stanley Entertainment owns it because that's what everything else says throughout the entire complaint. Counsel, before you leave, I want to ask you the same question I asked opposing counsel. I asked whether or not the leave to amend was in the fraud allegations were tied to the unenforceable assignment agreement. Opposing counsel said no. What's your response to that? I'm sorry, you broke up a little bit there on my side. Can you repeat that? I said that the fraud allegations that opposing counsel said would be included if leave to amend were granted appeared to be also tied to the unenforceable assignment agreement. He said no. What's your response? My response is, Your Honor, they do. And in fact, if you read the actual text of the complaint, the only allegation of any misrepresentation against POW, the only allegation is that they misrepresented that Stanley owned these rights and had the power to assign them to POW. They're not saying that they tricked him into signing some document. They're not saying that they lied to them and said, hey, we're going to give you something in exchange for this and then didn't give it to them. What they're saying is that they lied to him and said, oh, you own this, but in fact, you don't own it because it belongs to Entertainment. We've already established that's not a lie. That's an absolute unequivocal, unassailable fact. It's been proven by five different courts and two appellate courts that the 1998 agreement is not valid. To the point, I want to point this out as well, Your Honor, is that the prior courts that took up this issue even referred to, the last one that referred to this is objectively unreasonable. Bringing these constants of action again is objectively unreasonable. Her complaint mirrors all of those prior complaints. All of those prior complaints were not brought by the same person. They were brought by Stanley Media Incorporated. They were brought also by Abedin, one of the shareholders of the company, and a couple other shareholders. The truth is that the people who are pulling the strings here are very comfortable with having other people file their cases on their behalf. And they should be sanctioned. Probably so. They never will be, Your Honor, because they will evade sanction forever because they will not be party to the case. All right. Thank you very much. Your time is up and you were helpful. We'll have one rebuttal between the two of you. Who's going to rebuttal? Oh, Your Honor. Yes. Thank you. There's two legal principles that apply here in response to what Mr. Rainey said. One, under Rule 12b-6 and Rule 11, all inferences need to be resolved in favor of plaintiffs. Just very specifically in the complaint, from where would you get the inference that she is asserting some right that is not dependent on the contract and does not belong to SLA? Sure. Right. Count 1, paragraph 49, plaintiff is the rightful party in interest and legal owner of the assets. She pleaded a broad ownership claim. Any legal theory that gives her ownership is subsumed by this very broad claim. And then when you go down to paragraph 55 regarding the 1998 agreement, it says plaintiff is insecure and uncertain. Not that she claimed is insecure and uncertain with respect to its right status and other equitable and legal relations with regard to the October 15, 1998 agreement. It was a cloud on title. Your opponent's suggestion, the reason I'm interrupting you just because you're out of time and I want to get some. Yes, Your Honor. What about your opponent's objection or representation that there's nothing in the factual allegations to support any of that? Where are the factual allegations? Is there anything? Well, the factual allegations are the first paragraph where it says that she's that she is his heir. It says that she got rights upon his death. First paragraph of the complaint. And Your Honor, she is entitled to amend unless amendment would be futile. I'm reading from the opposition 3 ER 282, the opposition to the motion to dismiss. Miss Lee says is in black and white. She is only seeking declaratory relief with respect to Stanley's postmortem rights under Civil Code Section 33 44.1 and, if necessary, will amend her complaint to specify the statute in question. Mr. Rainey's statement with the fact that his postmortem rights are actually actually belong to S. L. A. Right? No, Your Honor. The way Mr. Freund formulated the complaint is as follows. She sought a declaration of ownership. Anything that would get J. C. Ownership is subsumed by the very broad allegation in paragraph 49 parent plant is the rightful party and interest in legal owner of the assets. She can get it in more than one way, though the district court only rejected one of two ways. She could get it through the 1998 contract, or she could get it by finding the power contracts to have been procured by fraud and that she is the statutory heir of those rights. Option to the fraud plus the statutory claim has never been adjudicated by anyone. The fraud has been alleged either as such, right? There's no allegation of the only allegation of that fraud in here is the allegation that they misled Stanley about whether he actually had any rights after the S or whether they all belong to S. L. A. Your Honor, I respectfully submit that that is construing it in the light most favorable to Powell, and we seek amendment to clarify that the fraud alleged relates to fraud in the procurement of the power contracts that makes them invalid and unenforceable, and there has not been an adjudication of that issue. All right. Thank you very much. Thank you both very much. Um, and the case of Lee and foreign legal versus power entertainment is thank you, Your Honor.
judges: BERZON, RAWLINSON, Antoon